Defendant, a married woman, living separate and apart from her husband, called on Harvey Rothberg, a solicitor of this court, on March 16th, 1927, and retained him to institute and prosecute a suit for divorce from her husband — agreeing to pay him $1,000 for such services, and to give him a bond and mortgage to secure such payment, payable in six months, covering real estate which had come to her individually from a former husband. She executed and delivered such bond and mortgage on April 14th, 1927; complainant, by mesne assignments is the holder thereof and sues to foreclose the mortgage for non-payment of interest or principal at maturity.
Defendant's answer admits that the bond and mortgage were given by her for services to be performed by Mr. Rothberg, but contends that he did not perform the services as agreed by him. She also sets up that the mortgage is void because made by her, a married woman, without her husband joining. She counter-claims for the cancellation and surrender of the bond and mortgage.
The mortgage, as such, must be held invalid — being executed by a married woman and her husband not joining *Page 506 
therein. This was the common law, and, of course, is still the law unless modified by statute. The attention of the court has not been called to any statute, claimed to alter the common law in this behalf, except certain sections of the Married Women's act. Section 14 of that act specifically negatives any grant of power to a married woman to convey or encumber her real estate without the joinder of her husband, except in the express instances provided for in other sections of that act.
Section 8, o is relied on by complainant — but that section relates only to contingent estates or interests. No authority is cited for any different construction given to it in the forty-nine years it has been in effect. Obviously, if it had the effect argued by complainant the legislature would not have enacted section 8, h in 1896.
Moreover, such a mortgage was held invalid as recently as 1926, in Bennett v. Orchard, 4 N.J. Mis. R. 807; 134 Atl. Rep. 519.
Complainant also relies on the amendment or supplement of 1926 (P.L. 1926 p. 310), enabling a married woman to convey her real estate, separate and apart from her husband, if he conveys his interest therein by a separate conveyance. The act is in derogation of the common law and is to be strictly construed. It would seem probable that it was intended only to eliminate the necessity that the joinder of the husband must be in the same identical instrument executed by the wife — not to eliminate the requirement that the husband must (either in the same instrument or a separate instrument) join in the same transfer with the wife. In the instant case the husband subsequently executed a bargain and sale deed, not to the original mortgagee but to the present complainant (then the holder of the mortgage). This instrument is a deed, not a mortgage, and contains no reference to the mortgage. Assuming, for present purposes, its validity as a deed, it can scarcely be taken as a joinder, by separate instrument, in the wife's mortgage.
Furthermore, the act of 1926, by its terms, refers only to a "conveyance," not to a "mortgage." It is expressly a *Page 507 
supplement to the Married Women's act, and hence is to be construed with regard to the other provisions of that act. An examination of the several sections of that act (3 Comp. Stat.pp. 3225 et seq.), shows clearly that the legislature has consistently differentiated therein between the power to convey and the power to mortgage. It is concluded therefore that the act of 1926 in nowise enlarges the rights or powers of a married woman so far as concerns the mortgaging of her property.
Although the mortgage is invalid as such, it is, as Vice-Chancellor Leaming says, in Realty Title and Mortgage Co.
v. Schaaf, 81 N.J. Eq. 115 (at p. 116):
"well settled that under the circumstances stated, a court of equity will declare and enforce a lien against the separate estate for the debt intended to be secured by the mortgage. While the mortgage is not effective as a lien, it is effective to show that the debt was contracted on the credit of the married woman's separate estate, and that she intended it to be chargeable thereon" (citing cases).
Defendant contends that this principle is limited to cases where the mortgage was given in consideration of some actual increase or benefit to the separate estate of the married woman. Apparently the earlier adjudications reflect such a limitation, but equally apparently the later cases do not. To hold in accordance with defendant's contention it would be necessary to overrule such cases as Realty Title and Mortgage Co. v.Schaaf, supra. The essential requisites are that the debt shall have been contracted by the married woman herself (not as security for another), and on the credit of her separate estate which she intended to charge therewith. See Bennett v.Orchard, supra; Brady v. McHugh, 94 N.J. Eq. 336 (at p.340).
See, also, 3 Pom. Eq. Jur. (4th ed.) §§ 1121 et seq;
Professor Pomeroy there says (at p. 2589):
"Without attempting to trace the progress of the general doctrine through its whole course of development as it is now settled by the English courts, it is correctly formulated as follows: `If a married woman, having separate property, enters into an engagement, which *Page 508 
if she was a feme sole would constitute a personal obligation against her, and in entering into such engagement she purports to contract, not for her husband * * * but for herself and on the credit of her separate estate, and it was so intended by her and so understood by the person with whom she is contracting, that constitutes an obligation for which the person with whom she contracts has the right to make her separate estate liable."
There remains the question of failure of consideration. The orignal agreement, evidenced by a written memorandum signed by Mrs. Pomeroy April 14th, was that she retained Mr. Rothberg for the purpose of securing a divorce from her husband, and agreed to give him $1,000 for his services, and was about to execute to him a mortgage for that amount. Mr. Rothberg drafted the petition and had conferences and correspondence in the matter of the divorce, but the filing of the petition was withheld on Mrs. Pomeroy's direction until certain evidence could be secured. The following February she went to another solicitor. In the meantime Mr. Rothberg had had conferences with her and performed services in several other matters, and she had written a letter to him saying that she was willing to pay him the $1,000 anyway for the work he had done.
Mr. Rothberg produced in evidence all of his office records and correspondence, from which it appears that he did a considerable amount of work and spent a considerable amount of time on Mrs. Pomeroy and her matters — sufficient to justify, from the standpoint of the lawyer, a charge of that amount. On the other hand it is evident that she trespassed upon his time and took up a great deal of it unnecessarily and without commensurate benefit to herself. The specific services for which she originally agreed to pay the $1,000 (the divorce suit) were not performed. That was not Mr. Rothberg's fault; Mrs. Pomeroy directed him not to proceed — but still she did not, in fact, receive the original expected benefit. When she later agreed to — or said she was willing to — pay him the $1,000 for the services he had performed, the relationship of solicitor and client existed between them, and the matter must be viewed and determined upon general equitable principles. *Page 509 
The present complainant, of course, stands in the shoes of Mr. Rothberg; his rights are no greater, notwithstanding he paid full consideration for the bond and mortgage. There is no estoppel against Mrs. Pomeroy. Seeking the aid of equity, he must be willing to do equity.
When all of the equitable factors are taken into consideration, it would seem that this court should not adjudicate a lien for more than $650. Such will be the decree, without costs to either party.